**FILED**
**Feb 18, 2025**
**07:00 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | |
|---|---|
| SANDRA LANE | ) Docket No.: 2022-04-0191 |
|     Employee, | ) |
| v. | ) |
| REBO LIGHTING & | ) |
| ELECTRONICS, LLC, | ) State File No.: 17921-2022 |
|     Employer, | ) |
| And | ) |
| ACCIDENT FUND INS. CO. | ) |
|     Insurer, | ) Judge Robert Durham |
| And | ) |
| TROY HALEY, Administrator, | ) |
| SUBSEQUENT INJURY FUND. | ) |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This Court held an Expedited Hearing on February 11, 2025, on Ms. Lane's request that Rebo pay benefits for injuries she allegedly sustained from particulate exposure at work. The Court granted Rebo's motion for dismissal because Ms. Lane did not submit a medical opinion showing that her alleged injuries arose primarily out of her employment.

### History of Claim

From December 2021 to February 2022, Rebo renovated its factory. The work included spray-painting the walls and grinding and polishing the concrete floor. Ms. Lane, 78 years old at the time, continued working during construction. She testified to the pervasive smell of paint fumes and accumulation of white dust over the entire factory.

Ms. Lane stated that she experienced some difficulty breathing at the plant and informed her supervisor, who told her he had the same problem. She said that he reported their concerns to Rebo management, who told him that the paint fumes were not toxic.

On February 6, 2022, Ms. Lane had trouble breathing, and her son took her to the

1

emergency room. She said her employer was painting at the factory, and she had noticed some shortness of breath toward the end of the week but felt fine that weekend until early Sunday evening.

Ms. Lane was admitted to the hospital and diagnosed with an atrial heart flutter with acute congestive heart failure and respiratory failure. She suffered from swelling in the pleural lining of her lungs, which caused partial lung collapses. Her pulmonologist, Dr. Jack Carey, said the lung condition was "likely all from heart failure."

Ms. Lane was hospitalized until February 19. Other than the emergency room admission report, none of the records mentioned her exposure to paint fumes or any other substance at work. After discharge, she continued taking medication and treating for "recurrent atrial flutter."

After Ms. Lane's discharge, she reported her condition as a work injury to Rebo. Rebo provided a panel of physicians, and she chose Dr. Ty Webb, a general practitioner, but did not see him for several months.

In the meantime, Ms. Lane followed up with her primary care doctor, Robert Baker, on February 24. Dr. Baker noted her recent hospital stay and diagnosed chronic heart failure, atrial flutter, and esophagitis. She returned three other times with the last visit occurring in April. None of his notes attributed her symptoms to a hazardous material exposure or even mentioned that type of event.

After seeing Dr. Baker, Ms. Lane saw cardiologist Brian Dockery on her own. Ms. Lane said she was feeling well, and Dr. Dockery noted that she had maintained sinus rhythm since a cardioversion in March. When Ms. Lane's son asked if her exposure to chemicals could have caused her heart problems, Dr. Dockery said the workplace renovation was "somewhat temporally related" but "we cannot definitely say this was related to her condition."

Ms. Lane then saw Dr. Webb twice, who ultimately did not find her condition related to work.

At the first visit, she described her injury as an "allergic reaction to paint fumes." Upon exam, Dr. Webb found that the acute respiratory failure and pleural effusion diagnosed in February had "resolved." He also noted that her atrial flutter had improved and saw no reason she could not return to work. The note did not address causation.

Ms. Lane returned to Dr. Webb in January 2023 complaining of a slight cough, some generalized fatigue, and some shortness of breath when climbing stairs. According to the note, Ms. Lane's son felt her symptoms, including the heart condition, stemmed from her exposure at work. Dr. Webb recommended a chest x-ray and pulmonary function tests, but

Mr. Lane told him that Ms. Lane's own doctor had done them, so Dr. Webb decided to get the records from him. However, Dr. Webb asserted that "[based on the ER report and associated tests done in Feb 2022, I do NOT find evidence of causation between any type of particulate or chemical inhalation and the onset of atrial fibrillation." (Emphasis in original).

Ms. Lane did not offer any other medical opinions addressing causation. She and her son testified that she had been in good health before the exposure but she now requires multiple medications and can no longer work.

Ms. Lane filed a complaint with the Tennessee Occupational and Safety and Health Administration as to the safety measures Rebo had in place during construction. The investigation revealed that the paint fumes were not a hazardous exposure to employees. However, Rebo did not follow safety and health standards in preventing employees' exposure to dust, including silica particles created from grinding and polishing the concrete floor. TOSHA penalized Rebo for these violations.

At the end of Ms. Lane's proof, Rebo moved for involuntary dismissal of Ms. Lane's hearing request, which the Court granted.

### Findings of Fact and Conclusions of Law

Ms. Lane must prove a likelihood of prevailing at a hearing on the merits that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2024).

To prove causation, Ms. Lane must establish that her symptoms and need for treatment primarily arose out of her alleged work injury in February 2022. *Id.* at -102(12)(A) (2024). Further, causation must be proven to a "reasonable degree of medical certainty," which requires an expert medical opinion. *Id.* at -102(12)(C).

Ms. Lane did not submit an expert opinion establishing causation. Other than recording that Ms. Lane said she was exposed to paint fumes, none of the records from her emergency room visit and hospital stay mentioned this exposure. In fact, the pulmonologist's records said that her difficulty breathing was "likely" due to her congestive heart failure.

Dr. Dockery, Ms. Lane's personal cardiologist, could only say the symptoms were "temporally related" to her workplace exposure and could not attribute her symptoms to it. Finally, Dr. Webb, the authorized physician, said he did not find any evidence of causation between her exposure and her heart condition.[1] His opinion is presumed correct. *Id.* at -

---

[1] When granting Rebo's motion for dismissal, the Court misspoke as to the extent of Dr. Webb's record review. While he did review the hospital notes from Ms. Lane's February stay, nothing in his records

102(12)(E).

While TOSHA found Rebo violated safety regulations, that is not enough to find that Ms. Lane's condition primarily arose from the exposure. Thus, the Court holds that Ms. Lane is unlikely to prevail at a hearing on the merits that she suffered a work-related injury.

Rebo moved for involuntary dismissal under Rule 41.02 of the Tennessee Rules of Civil Procedure (2024). In *Carrillo v. Hurtado*, TN Wrk. Comp. App. Bd. LEXIS 40, at *9, 10 (Aug. 16, 2023), the Appeals Board held that the Court could grant a Rule 41.02 motion to dismiss but noted it applies to the expedited hearing only and does not dismiss the claim entirely. Applying this authority, the Court grants Rebo's motion to dismiss the hearing request.

This case is set for a Scheduling Hearing on **March 27, 2025, at 3:00 p.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

IT IS ORDERED.

**ENTERED February 18, 2025.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

---

showed that he reviewed Dr. Dockery's records. However, this does not change the Court's order for dismissal. Ms. Lane did not submit those records to Dr. Webb for review. Further, and more important, Dr. Dockery himself could not state to a reasonable degree of medical certainty that Ms. Lane's potential exposure at work primarily caused her complaints, and nothing suggested the records would have changed Dr. Webb's causation opinion.

Exhibits:
1. Ms. Lane's Rule 72 Declaration
2. Form C-42 Panel of Physicians
3. TOSHA report
4. Medical records from Cookeville Regional Medical Center
5. Medical records from Dr. Ty Webb
6. Medical records from Dr. Brian Dockery
7. Medical records of Dr. Robert Baker, Jr.

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on February 18, 2025.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Sandra Lane | X | X | 332 Mt. View Drive<br>Sparta, TN 38583<br>lane12014@gmail.com |
| Cole Stinson | | X | cole.stinson@afgroup.com |
| Patrick Ruth | | X | Patrick.Ruth@tn.gov |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*